**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vanessa R Williams, et al., | No. CV-26-01811-PHX-KML |
| Plaintiffs, | **ORDER** |
| v. | |
| Crystal Springs Apartments LLC, et al., | |
| Defendants. | |

Plaintiffs Vanessa R. Williams and Anselmo E. Jarvis, Jr., filed a complaint and an application for leave to proceed in forma pauperis. (Docs. 1, 3.) A few days later, plaintiffs filed an amended complaint. (Doc. 8.) Although plaintiffs are entitled to proceed in forma pauperis, granting that application allows the court to determine whether the amended complaint states any claims on which they might be able to obtain relief. 28 U.S.C. § 1915(e)(1). It does not.

## BACKGROUND

Jarvis, Williams, and Williams's five children live together. (Doc. 8 at 2.) The children are between ages 11 and six months. (Doc. 8 at 4-5.) Williams breastfeeds the youngest. Two of the older children have been diagnosed with Autism Spectrum Disorder, and the oldest has been diagnosed with pica, "a recognized medical condition in which a person compulsively ingests non-food objects including contaminated surfaces." (Doc. 8 at 4.) That child receives Supplemental Security Income ("SSI"). (Doc. 8 at 4.) Williams "has a documented medical diagnosis of asthma." (Doc. 8 at 3.)

Approximately eighteen months ago, plaintiffs began leasing a unit at Crystal Springs Apartments. (Doc. 8 at 7.) The named defendants are the owners and operators of that apartment complex. (Doc. 8 at 6.) At various points during their original tenancy, Williams disclosed to Crystal Springs staff that her children are disabled and that she has asthma. (Doc. 1 at 7-8.)

In February 2026, plaintiffs completed a lease application for a different unit in the complex. (Doc. 8 at 9.) When completing that application, Williams mentioned that one of her children receives SSI and she was unsure whether to include that amount. A Crystal Springs staff member "encouraged her to include it" in the application because "more income increases the chance of approval." (Doc. 8 at 9-10.) Williams included the SSI in the application. The application was approved.

Plaintiffs moved into the new unit on March 1, 2026. (Doc. 8 at 10.) Almost immediately they "observed insects crawling on the kitchen counter." (Doc. 8 at 13.) Williams complained and Crystal Springs staff told her that pest treatment services would occur on March 9, 2026. (Doc. 8 at 14.) On March 5, 2026, plaintiffs found cockroaches in their new unit. Plaintiffs allege one cockroach was "a translucent amber nymph—an immature cockroach." (Doc. 8 at 14.) Plaintiffs claim that is important because it takes 40 to 60 days for a cockroach "to reach that developmental stage from hatching." (Doc. 8 at 14.) So "[m]athematical calculation places colony establishment no later than mid-January 2026—before Plaintiffs ever moved" into the new unit. (Doc. 8 at 14.)

On March 8, 2026, plaintiffs provided defendants "a formal written notice" pursuant to state law "identifying the cockroach infestation as a material condition affecting health and safety." (Doc. 8 at 18.) On March 9, 2026, Williams sought medical treatment and "was diagnosed with acute asthma exacerbation." (Doc. 8 at 15.) Williams links that exacerbation to the cockroach infestation in the new unit. (Doc. 8 at 16.) Williams was prescribed a "prednisone course" to treat her asthma, which caused her "breast milk supply" to be "significantly reduced." (Doc. 8 at 16.) Plaintiffs allege this "permanently altered" the youngest child's "access to breast milk immune protections." (Doc. 8 at 16.)

Also on March 9, 2026, a pest control technician sprayed inside plaintiffs' new unit. (Doc. 8 at 18.) The following day, a Crystal Springs staff member falsely stated plaintiffs had refused the March 9 pest treatment. (Doc. 8 at 20.) The staff member also stated "she wanted to treat the whole unit and complete the full treatment on March 16." (Doc. 8 at 20.) On March 13, 2026, plaintiffs "filed a formal complaint with the United States Department of Housing and Urban Development Office of Fair Housing and Equal Opportunity." (Doc. 8 at 21.) Plaintiffs do not explain the contents of that complaint, but presumably it was based on the cockroach infestation.

On March 14, 2026, plaintiffs sent a written "reasonable accommodation request" to Crystal Springs. (Doc. 8 at 22.) Plaintiffs requested "a modification to the proposed treatment protocol." (Doc. 8 at 22.) Although not entirely clear, this seems to be a reference to the additional pest control treatment Crystal Springs planned to perform and instructions from Crystal Springs that plaintiffs needed to vacate the unit for four hours. Plaintiffs' accommodation request explained the children would be exposed to "post-treatment chemical residue and contaminated surfaces." (Doc. 8 at 22.) It also explained plaintiffs did not have "transportation to safely vacate with five minor children for four hours." (Doc. 8 at 22.) Plaintiffs do not explain what accommodation they were requesting, but they did not hear back from Crystal Springs. On March 16, a pest control technician arrived at their unit but plaintiffs "refused entry." (Doc. 8 at 23.)

Plaintiffs believe the foregoing facts support claims under the Fair Housing Act ("FHA") for disability discrimination, "familial status discrimination," "disability discrimination in application process," and retaliation. Plaintiffs appear to base these claims on the belief that defendants knew Williams and her children were disabled but still leased a cockroach-infested unit to them. (Doc. 8 at 25.) Plaintiffs also seem to allege defendants violated the FHA when they failed to accommodate their disabilities in connection with the pest control treatment. Beyond the FHA claims, plaintiffs assert numerous claims under the "Arizona Residential Landlord Tenant Act."

- 3 -

**ANALYSIS**

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (simplified). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### I.   FHA Disability and Familial Status Discrimination

Plaintiffs' FHA claims for discrimination based on disability and familial status appear to be based on a misunderstanding of how that law operates. Plaintiffs' claims are based on the belief that once defendants knew Williams and some of the children were disabled, simply renting a cockroach-infested apartment to them constituted "disability discrimination" and "familial status discrimination" under the FHA. That is not correct. The FHA makes it unlawful to "discriminate" in the rental of apartments based on disability or familial status. 42 U.S.C. § 3604(f)(1); 42 U.S.C. § 3604(b). Plaintiffs have not alleged any instances of "discrimination."

The term "discriminate" means to treat an individual "worse than others who are similarly situated." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 657 (2020) (Title VII); *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997) ("We apply Title VII discrimination analysis in examining [FHA] discrimination claims."). For their FHA claims alleging disability or familial status discrimination, plaintiffs have not identified any other similarly-situated individuals who were treated better. For example, if non-disabled individuals were provided apartments that did not have cockroaches, plaintiffs might have some basis for a discrimination claim. But plaintiffs have already alleged defendants had "systemic knowledge of property-wide infestation conditions." (Doc. 8 at 12.) In other words, plaintiffs have alleged that all units at Crystal Springs were infested with cockroaches, so they were not treated differently than anyone else. These

discrimination claims fail.

### II.    FHA Failure to Accommodate

Plaintiffs present an alternate theory under the FHA that defendants failed to make reasonable accommodations to their disabilities. This claim requires allegations plaintiffs are disabled within the meaning of the FHA, defendants knew of their disabilities, accommodating the disabilities "may be necessary to afford [plaintiffs] an equal opportunity to use and enjoy the dwelling," a possible "accommodation is reasonable," and defendants "refused to make the requested accommodation." *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

Plaintiffs may have adequately allegedly the first three requirements regarding disabilities, defendants' knowledge, and the need for accommodations, but they have not adequately alleged an accommodation was reasonable or that defendants refused such accommodations. Plaintiffs do not identify what accommodation they requested. They merely allege they wanted an unspecified "modification to the proposed treatment protocol" that would avoid any "post-treatment chemical residue" and would not require they leave the unit for four hours. (Doc. 8 at 22.) Plaintiffs do not allege such modifications were possible, nor do they explain why the modifications would qualify as "reasonable." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1148 (9th Cir. 2003) ("only 'reasonable' accommodations are required by the [FHA]"). But even if plaintiffs had identified a reasonable accommodation, their allegations establish defendants did not have sufficient time to evaluate their request.

Plaintiffs sent their accommodations request on March 14, 2026, and two days later a pest control technician arrived at their door. (Doc. 8 at 23.) Plaintiffs refused entry and filed this suit the following day. These allegations do not establish "defendants refused to make" any accommodations. *Id.* In general, a defendant may be deemed to have constructively denied an accommodation request if there are allegations of "unreasonable delay or bad faith delay." *Hume v. Guardian Mgmt. LLC*, No. 3:21-CV-517-SI, 2022 WL 17834397, at *4 (D. Or. Dec. 21, 2022). Defendants were not obligated to provide instant

accommodations and much longer delays than three days have been found not to constitute constructive denials. *See, e.g.*, *Anderson v. Ross Stores, Inc.*, No. C 99-4056 CRB, 2000 WL 1585269, at *8 (N.D. Cal. Oct. 10, 2000) (citing cases in context of ADA claim involving delays of weeks or months). In these circumstances, plaintiffs have not stated a plausible claim for failure to accommodate.

### III.    FHA Disability Discrimination in Application Process

Plaintiffs also allege a "disability discrimination in application process" claim under the FHA. Although hard to understand, plaintiffs seem to base this claim on a Crystal Springs staff member encouraging Williams to include the SSI when applying for the new apartment. According to plaintiffs:

> Encouraging disclosure of disability income that was unnecessary for qualification, over the applicant's expressed hesitation, constitutes discrimination in the terms and conditions of the application process under [the FHA].

(Doc. 8 at 27.) The court is unable to determine what theory plaintiffs are attempting to allege. There are no allegations defendants treated plaintiffs differently because the SSI was included in the application and plaintiffs' application was approved. This claim is dismissed.

### IV.    FHA Retaliation

Plaintiffs allege a claim for retaliation under the FHA. In general, this type of claim requires allegations of protected activity, an adverse action, and a causal link between the two. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). Plaintiffs allege they made complaints to Crystal Springs staff, and submitted a complaint to a federal agency on March 13, 2026. If those complaints were only that the apartment had cockroaches, it is unlikely plaintiffs engaged in protected activity because such conduct is not asserting any rights under the FHA. *See Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries*, 657 F.3d 988, 998 (9th Cir. 2011) (FHA retaliation claim requires defendants "were exercise[ing] or enjoy[ing] . . . [a] right granted or protected by [42 U.S.C. § 3604]"). But even if plaintiffs engaged in protected activity, they do not allege

they suffered any adverse actions thereafter.

Under the FHA, the "adverse action must be in the form of coerc[ion], intimidat[ion], threat[s], or interfere[nce]" with a right granted or protected by the FHA. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) (simplified). Plaintiffs have not identified any such actions by defendants. Instead, defendants allege "four specific retaliatory contacts," apparently believing each "contact" qualified as an adverse action. (Doc. 8 at 21.) The first "contact" occurred when a Crystal Springs staff member falsely claimed plaintiffs had refused pest control services. (Doc. 8 at 21.) The second occurred when staff informed plaintiffs they planned to enter the apartment. (Doc. 8 at 21-22.) The third when staff scheduled "an Extreme Roach Treatment." (Doc. 8 at 22.) And the fourth when a pest control company sent a form to Jarvis, who had not previously been involved "in vendor communications." (Doc. 8 at 22.) None of these come close to intimidation, threats, or interference with plaintiffs' "right to take and enjoy possession of a home free from discrimination based on a protected characteristic." *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128, 1143 (9th Cir. 2024). The retaliation claim is dismissed.

### V.    State Law Claims

Plaintiffs assert a variety of state-law claims. Because plaintiffs have not alleged any plausible federal claim, the court will not exercise supplemental jurisdiction over those state-law claims. 28 U.S.C. § 1367(c)(3).

### VI.    Leave to Amend

Plaintiffs are granted limited leave to amend. Plaintiffs may amend their "failure to accommodate" claim under the FHA, their retaliation claim under the FHA, and any state law claims they wish to assert. Plaintiffs are not granted leave to amend their disability or "familial status" discrimination claims under the FHA because they have already alleged all units in the complex were cockroach-infested. See *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (plaintiffs may amend to include "additional allegations that are consistent with the challenged pleading and that do not contradict the allegations

in the original complaint").

## VII.    AI Usage

In their original complaint, plaintiffs disclosed they "used AI tools to assist in drafting this complaint," but claimed "[a]ll factual allegations are based on Plaintiffs' personal knowledge and documentation." (Doc. 1 at 2.) The amended complaint does not contain such a disclosure, although it appears plaintiffs used AI tools to draft that complaint also.

Having reviewed plaintiffs' filings, the use of "AI tools" has been counterproductive. Plaintiffs' lengthy allegations do not establish any plausible basis for relief and assert claims that are not recognized under existing law. It also appears unlikely plaintiffs have conducted the required amount of investigation to determine whether their claims have a good faith factual and legal basis. Fed. R. Civ. P. 11. In filing their amended complaint or any other document, plaintiffs are not prohibited from using generative artificial intelligence ("generative AI"), but if they use generative AI they must comply with the following.

If generative AI is used, plaintiffs must attach to the subject filing a separate declaration disclosing the use of generative AI and certifying that the filer, in the exercise of the filer's independent judgment, has personally reviewed and verified the content of the filing as accurate and in compliance with Federal Rule of Civil Procedure 11. The declaration must identify which, if any, portion of the filing incorporates Generative AI outputs. Any party who presents to the court a pleading, written motion, or other paper incorporating inaccurate or undeclared generative AI outputs, including but not limited to inaccurate or non-existent case citations, may be subject to sanctions without further warning.

"Generative AI" as used in the previous paragraphs refers to large language models that accept user input and generate new content. Generative AI includes, but is not limited to, the tools available through ChatGPT, Claude, Copilot, DeepSeek, Google Gemini, and Grok.

**IT IS ORDERED** the Application (Doc. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** the complaint (Doc. 1) is **DISMISSED WITH LIMITED LEAVE TO AMEND**. No later than **April 13, 2026**, plaintiffs may file an amended complaint. The Clerk of Court shall enter a judgment of dismissal with prejudice if no amended complaint is filed by that date.

**IT IS FURTHER ORDERED** the Motion to Allow Electronic Filing (Doc. 4) is **GRANTED**. Plaintiffs shall comply with all rules outlined in the District of Arizona's Case Management/Electronic Case Filing Administrative Policies and Procedures Manual, maintain access to the required equipment and software, maintain a personal electronic mailbox of sufficient capacity to send and receive electronic notice of case related transmissions, be able to electronically transmit documents to the court in .pdf format, register as a subscriber to PACER (Public Access to Electronic Records) within five days of the date of this Order and comply with the privacy policy of the Judicial Conference of the United States and E-Government Act of 2002. Any misuse of the ECF system will result in immediate discontinuation of this privilege and disabling of the password assigned to the party.

Dated this 30th day of March, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**